UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO: 1:19-CV-440 |
| v. | ) | |
| | ) | |
| HEIRS AND DEVISEES OF | ) | |
| JAMES SAMARAS and HELEN J. SAMARAS, | ) | |
| DECEASED; and PETER SAMARAS, | ) | |
| | ) | |
| Defendants. | ) | |

## IN REM COMPLAINT

Comes now the plaintiff, United States of America, by Thomas L. Kirsch II, United States Attorney for the Northern District of Indiana, and Sharon Jefferson, Assistant United States Attorney, for and on behalf of the U.S. Department of Housing and Urban Development (HUD), an agency of the United States government, and for its cause of action alleges as follows:

## JURISDICTION

This is an action to foreclose a mortgage to recover indebtedness due the United States. This Court has jurisdiction pursuant to 28 U.S.C. Section 1345 and venue is proper.

## COUNT I

1. Prior to their death, James Samaras and Helen J. Samaras were the owners of the following described real estate in Allen County, Indiana:

> Lot Numbered 201 in Brentwood Park, Section "C", an addition to the city of Fort Wayne, Indiana, according to the plat thereof recorded in plat record 26, pages 22-25 of the records in the office of the recorder of Allen County, Indiana.

Commonly Known As: 2518 Bolton Drive, Fort Wayne, Indiana 46805. (Herein "the real estate.")

2.  On January 19, 1998, James and Helen J. Samaras executed a promissory note (the "note") a copy of which is attached and made a part hereof as "Exhibit 1."

3.  To secure payment of their obligation under the note, James and Helen J. Samaras executed a home equity conversion mortgage (the "mortgage") and a second mortgage, copies of which are attached, here incorporated by reference and marked for identification as "Exhibit 2", and "Exhibit 3."

4.  The note and mortgages are held by the United States.

5.  James Samaras died a resident of Fort Wayne, Indiana on October 30, 2008.

6.  Helen J. Samaras died a resident of Fort Wayne, Indiana on November 27, 2011.

7.  Repayment of the debt evidenced by the note is in default.  There is due $99,274.75 plus interest from April 10, 2017 to date of judgment at $6.85 per day.

8.  No personal representative was appointed.  Title vested in the heirs of James Samaras and Helen J. Samaras at their death and the heirs are named as parties to answer as to their interest, if any, in the real estate.

9.  The heirs and devisees of James and Helen J. Samaras are named as parties to answer as to their interests, if any, in the real estate.  Peter Samaras is believed to be a possible heir of James Samaras and Helen J. Samaras, and is made a party to answer as to his interest, if any, in the property. However, all of the heirs and devisees at law are unknown and service by publication is required.

2

WHEREFORE, plaintiff requests:

1.  A judgment in rem against the property in the amount of $99,274.75, together with accruing interest at $6.85 per day.

2.  An order declaring the lien of plaintiff's mortgage to be prior and paramount to the interests of all other parties.

3.  An order foreclosing the equity of redemption of the heirs of James Samaras and Helen J. Samaras, and all persons claiming under or through them, in the real estate.

4.  An order directing the sale of the property by the U.S. Marshals and payment of the proceeds to pay the Marshal's costs, then to pay the judgment of plaintiff, and with any then-remaining overplus paid to the Clerk of the Court to be disposed of as the Court shall direct.

5.  That the plaintiff have such other and further relief as is just and proper in the premises.


Respectfully submitted,

THOMAS L. KIRSCH II
UNITED STATES ATTORNEY

s/ Sharon Jefferson

By:    Sharon Jefferson
       Assistant United States Attorney
       United States Attorney's Office
       5400 Federal Plaza, Suite 1500
       Hammond, IN 46320
       Tel: (219) 937-5500
       Fax: (219) 852-2770
       Email Address: Sharon.jefferson2@usdoj.gov

3

# ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)



FHA Case No. **151-534603-5/255**

**151-534603-5**   SAMARAS

*1*

**JANUARY 19**    , 1998

**2518 BOLTON DRIVE, FORT WAYNE, INDIANA 46805**
[Property Address]

## 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note.  "Lender" means
**HOMEOWNERS MORTGAGE SERVICE, INC.**

and its successors and assigns.  "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated    **JANUARY 19, 1998**     ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest.  All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on    **APRIL 12**     , 2076   . Interest will be charged on unpaid principal at the rate of    **SIX AND 450/1000**     percent (    6.4500 %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.
**(B) Place**
Payment shall be made at **HOMEOWNERS MORTGAGE SERVICE, INC.,**
**11555 NORTH MERIDIAN STREET, SUITE 160,**
**CARMEL, INDIANA 46032**                                       , or any such other place as Lender may designate in writing by notice to Borrower.
**(C) Limitation of Liability**
Borrower shall have no personal liability for payment of the debt.  Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. INTEREST RATE CHANGES
**(A) Change Date**
The interest rate may change on the first day of    **APRIL, 1998**     , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month.  "Change Date" means each date on which the interest rate could change.
**(B) The Index**
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary.  Lender will give Borrower notice of the new Index.
**(C) Calculation of Interest Rate Changes**
Before each Change Date, Lender will calculate a new interest rate by adding a margin of   **ONE AND 200/1000** percentage points (    1.20000 %) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.
**(D) Limits on Interest Rate Changes**
☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.
☒ The interest rate will never increase above    **SIXTEEN AND 450/1000**     percent (    16.45000 %).
**(E) Notice of Changes**
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

30XA : 11/96                                    Page 1 of 3

EXHIBIT 1

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

EXHIBIT 1

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)  Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

    (ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

## 12. SHARED APPRECIATION

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.


_____ (Seal)
**JAMES SAMARAS**                                    -Borrower


_____ (Seal)
**HELEN  J. SAMARAS**                                -Borrower


Without Recourse
Pay To The Order Of
Wendover Funding, Inc/

_____     _____
William E. Agner, President              Date
Homeowners Mortgage Service, Inc.

32XA : 11/96                          Page 3 of 3

EXHIBIT 1

RECORD AND RETURN TO:
HOMEOWNERS MORTGAGE SERVICE, INC.
11555 NORTH MERIDIAN STREET, SUITE 160
CARMEL, INDIANA 46032

#980004661   Page 1

RECORDED
01/26/1998 14:04:44
RECORDER
VIRGINIA L. YOUNG
ALLEN COUNTY, IN

Doc. No.    980004661
Receipt No.    1882

DCFD        3.00
MTG         20.00
Total       23.00

──────────── [Space Above This Line For Recording Data] ────────────

**State of Indiana**                    FHA Case No. **151-534603-5/255**

# ADJUSTABLE RATE           **151-534603-5**

# HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **JANUARY 19, 1998** . The mortgagor is
**JAMES SAMARAS AND HELEN J. SAMARAS , HUSBAND AND WIFE**



COLUMBIA LAND TITLE COMPANY, INC.

whose address is   **2518 BOLTON DRIVE,**
**FORT WAYNE, INDIANA 46805**                                    ("Borrower").
This Security Instrument is given to
**HOMEOWNERS MORTGAGE SERVICE, INC.**

, which is
organized and existing under the laws of   **THE STATE OF INDIANA** , and whose address is
**11555 NORTH MERIDIAN STREET, SUITE 160, CARMEL, INDIANA 46032**

("Lender"). Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement
to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to
adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**ONE HUNDRED NINE THOUSAND FIVE HUNDRED AND 00/100 - - - - - - - - - - - - - - - - - - - - - - - - - - -**
**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**
(U.S. $   **109,500.00**            ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full
debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
**APRIL 12**        , **2076** . For this purpose, Borrower does hereby mortgage, grant and convey to Lender the
following described property located in   **ALLEN**                  County, Indiana:

00XC : 01/97                          Page 1 of 8

EXHIBIT 2

LOT NUMBERED 201 IN BRENTWOOD PARK, SECTION "C", AN ADDITION TO
THE CITY OF FORT WAYNE, INDIANA, ACCORDING TO THE PLAT THEREOF
RECORDED IN PLAT RECORD 26, PAGES 22-25 OF THE RECORDS IN THE OFFICE
OF THE RECORDER OF ALLEN COUNTY INDIANA.

which has the address of  **2518 BOLTON DRIVE**

[Street]

**FORT WAYNE** , **INDIANA** 46805 ("Property Address"):

[City] [State] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will
defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the
debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents,
flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of
payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the
Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property,
whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including
fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the
Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the
Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the
Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any
renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to,
Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if
not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make
payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied
to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's
security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

00XA : 11/96 Page 2 of 8

EXHIBIT 2

security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

EXHIBIT 2

**8. Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property); or

(iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(iv) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(v) An obligation of the Borrower under this Security Instrument is not performed.

(b) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

(c) **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(d) **Trusts.** Conveyance of Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

EXHIBIT 2

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to First Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i) The First Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

EXHIBIT 2

(e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument, Lender shall give notice to Borrower in the manner provided in Paragraph 16. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment**

EXHIBIT 2

in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

**22. Adjustable Rate Feature.** Under the Second Note, the initial stated interest rate of         6.4500% which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **APRIL, 1998**             , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **SIXTEEN AND 450/1000**                        percent (        16.45000 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

**24. Waivers.** Borrower waives all right of valuation and appraisement.

06XC : 05/97                                Page 7 of 8

EXHIBIT 2

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. *[Check applicable box(es).]*

☐ Condominium Rider     ☐ Shared Appreciation Rider     ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    *James Samaras*    (Seal)
                                 **JAMES SAMARAS**    -Borrower

_____    *Helen J. Samaras*    (Seal)
                                 **HELEN J. SAMARAS**    -Borrower

―――――――――――――― [Space Below This Line For Acknowledgment] ――――――――――――――

**STATE OF INDIANA**                **ALLEN COUNTY SS:**

On this **19TH** day of **JANUARY, 1998** , before me, the undersigned, a Notary Public in and for said County, personally appeared **JAMES SAMARAS AND HELEN J. SAMARAS**

and acknowledged the execution of the foregoing instrument.
WITNESS my hand and official seal.

My commission expires: _____ 10/27/2000 _____    *Cheri R. Verhest*
                                 Notary Public   Cheri R. Verhest
                                 Resident of Allen County Indiana

This instrument was prepared by: **Kenneth D. Withers**

*(Notary seal: NOTARY PUBLIC ★ SEAL INDIANA)*

EXHIBIT 2

CR97-13988F

EXHIBIT 2

**#980004662**   Page 1

RECORD AND RETURN TO:
**HOMEOWNERS MORTGAGE SERVICE, INC.**
**11555 NORTH MERIDIAN STREET, SUITE 160**
**CARMEL, INDIANA 46032**

RECORDED
01/26/1998 14:04:45
RECORDER
VIRGINIA L. YOUNG
ALLEN COUNTY, IN

Doc. No.    980004662
Receipt No.      1882

DCFD       3.00
MTG       20.00
  Total    23.00

---

————————————————— [Space Above This Line For Recording Data] —————————————————

**State of Indiana**          FHA Case No. 151-534603-5/255
                                        151-534603-5

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION SECOND MORTGAGE

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on
**JANUARY 19, 1998**      . The mortgagor is
**JAMES SAMARAS AND HELEN  J. SAMARAS , HUSBAND AND WIFE**

COLUMBIA LAND TITLE COMPANY, INC.

whose address is   **2518 BOLTON DRIVE,**
**FORT WAYNE, INDIANA 46805**                         ("Borrower"). This Security Instrument
is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W.,
Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender
is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement
dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by
Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest, at a rate subject to
adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**ONE HUNDRED NINE THOUSAND FIVE HUNDRED AND 00/100 - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**
(U.S. $   **109,500.00**       ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note.
The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
**APRIL 12**       , 2076 . For this purpose, Borrower does hereby mortgage, grant and convey to Lender the
following described property located in   **ALLEN**                         County, Indiana:

04XC : 01/97                          Page 1 of 8



# EXHIBIT 3

LOT NUMBERED 201 IN BRENTWOOD PARK, SECTION "C", AN ADDITION TO THE CITY OF FORT WAYNE, INDIANA, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT RECORD 26, PAGES 22-25 OF THE RECORDS IN THE OFFICE OF THE RECORDER OF ALLEN COUNTY INDIANA.

which has the address of **2518 BOLTON DRIVE**

[Street]

**FORT WAYNE**              , **INDIANA**              46805              ("Property Address");
[City]                        [State]                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's

10XA : 09/97                          Page 2 of 8

**EXHIBIT 3**

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03XA : 11/96                                    Page 3 of 8

# EXHIBIT 3

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower, or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **SIXTY DAYS** from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **SIXTY DAYS** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall

**EXHIBIT 3**

be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

05XA : 11/96  Page 5 of 8

**EXHIBIT 3**

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument, Lender shall give notice to Borrower in the manner provided in Paragraph 16. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment**

# EXHIBIT 3

in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priorty of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **6.4500** % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **APRIL, 1998**            , and on   ☐   that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐   (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒   (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **SIXTEEN AND 450/1000**                    percent (      **16.45000** %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

**24. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

**EXHIBIT 3**

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider    ☐ Shared Appreciation Rider    ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____        _James Samaras_    (Seal)
                                     **JAMES SAMARAS**    -Borrower

_____        _Helen J. Samaras_    (Seal)
                                     **HELEN J. SAMARAS**    -Borrower

──────────────── [Space Below This Line For Acknowledgment] ────────────────

STATE OF INDIANA      ,      ALLEN COUNTY SS:

On this **19TH** day of **JANUARY, 1998** , before me, the undersigned, a Notary Public in and for said County, personally appeared
**JAMES SAMARAS AND HELEN J. SAMARAS**

and acknowledged the execution of the foregoing instrument.
WITNESS my hand and official seal.

My commission expires: ___10/27/2000___    _Cheri R. Verbest_
                            Notary Public  Cheri R. Verhest
                                    Resident of Allen County Indiana
This instrument was prepared by: **Kenneth D. Withers**

07XC : 05/97                          Page 8 of 8

(Notary Seal: NOTARY PUBLIC ★ SEAL INDIANA)

**EXHIBIT 3**

JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1  U.S. Government
Plaintiff

❏ 3  Federal Question
*(U.S. Government Not a Party)*

❏ 2  U.S. Government
Defendant

❏ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal | ❏ 376 Qui Tam (31 USC |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ❏ 140 Negotiable Instrument | Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted | Liability | ❏ 368 Asbestos Personal | | ❏ 840 Trademark | ❏ 460 Deportation |
| Student Loans | ❏ 340 Marine | Injury Product | | | ❏ 470 Racketeer Influenced and |
| (Excludes Veterans) | ❏ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations |
| ❏ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 480 Consumer Credit |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | Act | ❏ 862 Black Lung (923) | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | ❏ 850 Securities/Commodities/ |
| ❏ 190 Other Contract | Product Liability | ❏ 380 Other Personal | Relations | ❏ 864 SSID Title XVI | Exchange |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | Injury | ❏ 385 Property Damage | ❏ 751 Family and Medical | | ❏ 891 Agricultural Acts |
| | ❏ 362 Personal Injury - | Product Liability | Leave Act | | ❏ 893 Environmental Matters |
| | Medical Malpractice | | ❏ 790 Other Labor Litigation | | ❏ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ❏ 870 Taxes (U.S. Plaintiff | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | or Defendant) | ❏ 899 Administrative Procedure |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | Act/Review or Appeal of |
| ❏ 240 Torts to Land | ❏ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ❏ 245 Tort Product Liability | Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | Other | ❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

❏ 1  Original
Proceeding

❏ 2  Removed from
State Court

❏ 3  Remanded from
Appellate Court

❏ 4  Reinstated or
Reopened

❏ 5  Transferred from
Another District
*(specify)*

❏ 6  Multidistrict
Litigation -
Transfer

❏ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:     ❏ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Indiana

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   1:19-CV-440 |
| HEIRS AND DEVISESS OF HELEN J. SAMARAS, | ) |
| AND JAMES SAMARAS, DECEASED; ET AL. | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Peter Samaras
2002 Coronet Drive
Fort Wayne, IN 46815

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Sharon Jefferson
Assistant United States Attorney
United States Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, IN 46320

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____           _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.   1:19-CV-440

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: